The Hon. Thomas S. Zilly
Noted for: June 5, 2020

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| ESTATE OF WANGSHENG LENG, | No. 19-490 |
| Plaintiff, | |
| v. | **Plaintiff's Motion to Take Depositions of Defendants' Experts** |
| CITY OF ISSAQUAH, et al., | |
| Defendants. | |

Plaintiffs, by their attorneys, respectfully move for an order from this Court permitting Plaintiffs to take depositions all of Defendants' experts.

## INTRODUCTION

Plaintiffs have currently sought the deposition of 8 or 9 fact witnesses.[1] Defendants have now disclosed 3 experts. Shockingly, Defendants now seek to preclude Plaintiffs from disclosing all three of these experts because doing so would exceed the presumptive limit of 10 depositions by one or two. Defendants'

---

[1] The Parties are still discussing whether one of these depositions, that of Commander Chris Wilson, can be foregone. If stipulation is reached, Plaintiffs will have only sought 8 depositions of fact witnesses. If not, Plaintiff will have sought 9.

Plaintiff's Motion to Conduct
Additional Depositions – Page 1
Case No. 19-490

LOEVY & LOEVY
100 S. KING STREET, #100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

1 position is unreasonable, obstructive, and contrary to the Federal Rules of Civil
2 Procedure. Accordingly, and unfortunately, this Court's intervention is necessary.
3 Plaintiff seeks leave to depose all of Defendants' experts, regardless of the number of
4 fact depositions that occur. Doing so is beyond proportional to the needs of the case
5 and Plaintiffs would be prejudiced If they were forced to proceed to the remaining
6 phases of this matter without having deposed all of Defendants' experts.

## BACKGROUND

This suit arises from the excessive and fatal uses of force by two Issaquah Police Department Officers—Kylen Whittom and Michael Lucht—against Leng Wangsheng, an elderly man, in August of 2018. *See generally* Dkt. 40 (First Amended Complaint (FAC). Mr. Leng died as a result of the injuries he suffered during this encounter. *Id.* ¶¶1-5. Plaintiffs are the Estate of the deceased, which is administered by his widow, Liping Yang, also a Plaintiff. *Id.* ¶¶9-10. Plaintiffs allege not only that Whittom and Lucht used excessive force but that their doing so is attributable to the City of Issaquah, given its policies, practices, and customs as well as its negligence, under state law. *Id.* ¶¶66-76, 84-86, 89-90, 92-95.

The use of force incident played out as follows: an Issaquah resident, James Leming, called the police to report a disturbance outside of his apartment, which he believed was related to the residence of Mr. Leng and Ms. Yang, who lived across the hall. *See* Exhibit 1, (Police Report). No criminal acts had, in fact, occurred. *Id.* at 5. Lucht and Whittom arrived on scene. The circumstances surrounding the officers' entry to Leng's apartment and subsequent use of force once inside is the core dispute in this lawsuit. FAC, Dkt. 40, at ¶¶29-65. Without wading into those issues, all agree

Plaintiff's Motion to Conduct
Additional Depositions – Page 2
Case No. 19-490

LOEVY & LOEVY
100 S. KING STREET, #100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

1  that when Mr. Leng was handcuffed he "went limp," and the paramedics were called.

2  *Id*. ¶46; Answer, Dkt. 43, ¶46. In the meantime, Sgt. Laura Asbell, the Individual

3  Defendants' direct supervisor, arrived on scene. Ex. 1, at 7. She was first to discuss with

4  Lucht and Whittom what happened and was required, under Issaquah Police

5  Department Policy, to conduct the initial use of force review for this incident. *Id*.; *see*

6  Exhibit 2, Issaquah Police Department Use of Force Policy, at 7-8 (describing

7  supervisor responsibilities). All agree that Mr. Leng went "limp" due to a spinal cord

8  injury that happened during the force incident/handcuffing, and died over a month

9  later. FAC, Dkt. 40, at ¶¶52. Mr. Leng's autopsy was performed by the King County

10 Medical Examiner's office, which found that the death was a homicide secondary to

11 blunt force trauma caued by the officers. *Id*. ¶64-65.

12     When the IPD found out Mr. Leng had died, it requested the King County

13 Sheriff's office conduct a criminal investigation, which was conducted by Detective

14 Mike Mellis. Exhibit 3, Mellis Report 1. Around the same time, Ms. Yang came to the

15 Department to make a complaint related to her husband's passing and met with the

16 IPD Chief of Police and a Commander, Chris Wilson. Exhibit 4, Wilson Notes.

17 Commander Wilson was also the liaison between Issaquah and the criminal

18 investigation, and was specifically told that the criminal investigation would not

19 involve any internal affairs for policy or other issues. *Id*.; Ex. 3, at 1-2.

20     There are myriad disputes of fact in this case, including whether the officers

21 were entitled to enter the Leng residence, the amount of force they used, and whether

22 any force was justified at all. Relatedly, given the fact that Mr. Leng died about a

23 month after the incident—and was continuously hospitalized or under hospice care in

24

Plaintiff's Motion to Conduct
Additional Depositions – Page 3
Case No. 19-490

LOEVY & LOEVY
100 S. KING STREET, #100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

1  the interim—there is a substantial dispute about Mr. Leng's medical condition, and
2  both sides have disclosed multiple experts related to these issues.

3  From plaintiff's perspective, as supported by expert testimony, the Defendants
4  used excessive force that caused Mr. Leng's spinal cord injuries that ultimately led to
5  his death in a situation where *no* force was justified and their account is inconsistent
6  with the medical evidence. *See* Exhibit 5, Peters Report; Exhibit 6, Arden Report. On
7  the other hand, through their own testimony and now their experts, Defendants
8  contend that force was justified, that Mr. Leng was treated gently by the officers when
9  he was handcuffed and went "limp," and that Mr. Leng's injuries and death were not
10 because of excessive force but because of Mr. Leng's underlying medical issues. *See*
11 *generally* Exhibit 7, Paytner Report; Exhibit 8, Lacy Report; Exhibit 9, Scher Report;
12 Dkt. 25, at 2.

13 Moreover, the Issaquah Police Department's handling of this matter—including
14 its refusal to conduct any form of internal investigation into a use of force that caused
15 the death of a civilian—is the subject of Plaintiff's claims against the City of Issaquah,
16 and has been a part of expert discovery. *See* FAC, Dkt. 40, ¶¶¶¶66-76, 84-86, 89-90,
17 92-95; Exhibit 5. This now includes a new expert report submitted by Defendants'
18 police practices expert just last week. Exhibit 10, Paytner Report #2.

19 The parties have been diligent but judicious in conducting discovery in this case.
20 Plaintiff has taken depositions of: (1) Defendant Lucht, (2) Defendant Whittom, (3)
21 James Lemming, the precipitant witness whose call prompted the police action in the
22 first place, (4) Sgt. Asbell, the direct supervisor who arrived on-scene in the immediate
23 aftermath of the incident, (5) the Chief of police (who is the official policy maker for
24

Plaintiff's Motion to Conduct
Additional Depositions – Page 4
Case No. 19-490

LOEVY & LOEVY
100 S. KING STREET, #100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

1  the city of Issaquah), (6) the doctor from the King County Medical Examiner's office
2  who conducted the autopsy of Mr. Leng, and (7) Detective Mellis, the King County
3  Sheriff's detective who conducted a criminal investigation of Mr. Leng's death.
4  Plaintiff has also noticed a 30(b)(6) deposition, which is set to proceed on May 18,
5  2020. The parties are also still conferring about whether the deposition of Commander
6  Chris Wilson will proceed.

7  At the outset of this case, as noted in the Rule 26(f) report, Dkt. 11, at 3, Plaintiff
8  recognized that more than 10 depositions would likely be necessary. Defendants have
9  disclosed more than 40 fact witnesses. Ex. 11, Defendants' Lay Witness Disclosures.

10  Defendants have disclosed three experts—a biomechanical engineer, a "police
11  practices" expert, a medical examiner. *See* Exhibits 7, 8, & 9. Naturally, Plaintiffs seek
12  to depose all three of these experts, regardless of whether Plaintiffs have deposed 10
13  fact witnesses or not. Defendants have refused this modest request, refusing to agree to
14  more than 10 depositions, including of *their own experts*. The meet-and-confer
15  process having failed, motion follows.

**ARGUMENT**

### I. Legal Standard

The Federal Rules of Civil Procedure are liberal in scope and designed to assist in allowing the parties to prepare for trial. "The broad purpose of the discovery rules is to enable parties to prepare for trial, and it is not their purpose to give one party strategic advantage over other." *Igbinovia v. Catholic Healthcare W.*, No. 2:07-CV-01170-GMN, 2010 WL 5070881, at *4 (D. Nev. Dec. 7, 2010) (citing *Cooper v. Stender*, 30 F.R.D. 389, 393 (E.D.Tenn.1962))

Plaintiff's Motion to Conduct
Additional Depositions – Page 5
Case No. 19-490

LOEVY & LOEVY
100 S. KING STREET, #100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

Rule 26 provides that parties may obtain discovery or any non-privileged matter relevant to the claims or defenses in the case. Fed. R. Civ. P. 26. While Rule 30 sets a default limit of 10 depositions per side, a party may seek leave to exceed this limit, which the Court "must grant . . . to the extent consistent with Rule 26(b)(1) and (2)." Fed. R. Civ. P. 30(a)(2).

Rule 26(b)(1) and (2) operate in tandem, setting forth the liberal scope of discovery and the specific circumstances in which courts may limit it. Thus, Rule 26(b)(1) sets out a broad and permissive scope of discovery, providing that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

A party seeking to take more than 10 depositions must show that additional depositions are warranted under Rule 26. *See Shokri v. Boeing Co.*, No. C16-1132 RSM, 2017 WL 4339609, at *2 (W.D. Wash. Sept. 29, 2017) ("'A party seeking to exceed the presumptive limit bears the burden of making a 'particularized showing' of the need for additional depositions.' To make such a showing, a party must show not only that the additional depositions are warranted, but also that the depositions the party has already taken were warranted." (citing *Thykkuttathil v. Keese*, 294 F.R.D. 601, 603 (W.D. Wash. 2013)).

It is doubtful the 10-deposition limit applies to experts at all. *See Express One Int'l, Inc. v. Sochata,* 2001 WL 363073, at *3 (N.D. Tex. Mar. 2, 2001) ("It is not at all

Plaintiff's Motion to Conduct
Additional Depositions – Page 6
Case No. 19-490

LOEVY & LOEVY
100 S. KING STREET, #100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

1  clear whether expert depositions under Rule 26(b)(4) are governed by Rule
2  30(a)(2)(A), which specifically pertains to depositions under Rules 30 and 31. Expert
3  depositions are governed by Rule 26(b)(4), but could also be included in Rule 30's
4  broad application to "any person." Fed.R.Civ.P. 30(a)(1). Neither the cases, nor the
5  commentary shed any light on this issue."); *Andamiro U.S.A. v. Konami Amusement*
6  *of America, Inc.,* 2001 WL 535667, at *2 (C.D. Cal. Apr. 26, 2001) ("It is not clear
7  whether expert depositions under Fed. R. Civ. P. 26(b)(4) are governed by Fed. R. Civ.
8  P. 30(a)(2)(A).").

9        Indeed, as in *Express One*, courts have "declined to include expert deposition in
10 the presumptive limit because these witnesses' opinions cannot be discovered from
11 other sources; thus, the discovery is neither duplicative nor unreasonably cumulative."
12 *Nosrati v. Provident Life & Accident Ins. Co.*, 2020 WL 1181497, at *4 (C.D. Cal. Mar.
13 10, 2020) (citing *Andamiro U.S.A*, 2001 WL 535667, at *2 (finding experts "are not
14 persons whose opinions could be discovered from other sources; therefore, the
15 discovery sought is not duplicative or unreasonably cumulative"), and *C & C Jewelry*
16 *Mfg., Inc. v. West*, 2011 WL 767839, at * 1 (N.D. Cal. Feb. 28, 2011) (excluding expert
17 depositions from the ten-deposition limit)); *see also Najera-Aguirre v. Riverside,* 2019
18 WL 3249613, at *5 (C.D. Cal. Apr. 16, 2019) ("[T]he court will permit both plaintiffs
19 and defendants to depose expert witnesses without those depositions counting against
20 the total number of other depositions allowed.").

21 **II.    Expert Deps Should Not Count Against the Presumptive "10."**

22       This Court should follow the authorities above and hold that it "will not count
23 expert depositions against the total percipient witness depositions." *Nosrati*, 2020 WL
24

Plaintiff's Motion to Conduct
Additional Depositions – Page 7
Case No. 19-490

LOEVY & LOEVY
100 S. KING STREET, #100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

118497, at *4. The reasons for doing so are obvious: expert testimony is disclosed at the *end* of discovery period after the parties have spent considerable time and resources on the case. Parties, of course, are not required to tell the other side how many experts they might disclose before the deadline. As a consequence, it would not serve the truth-seeking or merits-focus of federal discovery to force a party to "guess" how many experts an opponent will disclose and then try to forego or make decisions about other discovery based upon some unknown guess or hunch.

Moreover, an opposing party might also be able to sandbag their opponent by disclosing many experts, forcing the opposing side to "guess" at which ones it will rely upon and depose those experts, and then withdraw the witnesses that have been deposed and proceed with others. Parties are not permitted to immunize their experts from examination in this way.

Doing so also undermines the merits and presentation at trial. Accordingly, as another court has explained in permitting expert depositions, "cases where expert testimony is central to the claims, such as in the present case, expanded discovery of expert trial witnesses often will result in better cross-examination and rebuttal at trial." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 2009 WL 861733, at *3 (S.D. Cal. Mar. 25, 2009). Here, "expert discovery central to the claims," particularly given the medical dispute at the core of this case: how much force did the officers use, and how much force would have been required to cause the injuries Mr. Leng suffered during his encounter with law enforcement that ultimately led to his death. Indeed, Defendants have long recognized that the expert issues in this case are central. Months ago, Defendants argued that "[w]hether Mr. Leng died as a result of his contact with

Plaintiff's Motion to Conduct
Additional Depositions – Page 8
Case No. 19-490

LOEVY & LOEVY
100 S. KING STREET, #100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

Defendant Officers is a question of medicine and science." Dkt. 25, at 2. In so doing, Defendants asserted that Mr. Leng "was the proverbial 'eggshell plaintiff,'" and argued that Mr. Leng's "variety of pre-existing conditions" contradict the notion that the officers used excessive force. Dkt. 25, at 2.[2]

In short, a rule requiring a party to "save" an unspecified number of depositions to wait and see how many experts their opponent will disclose undermines the purpose of placing expert disclosures near the end of discovery, disserves proper adjudication of a case on the merits, permits an unfair strategic advantage to an opposing party by forcing the other side to "guess" about what they might do, and would prejudice Plaintiffs on core issues of the case.

### III. Plaintiffs' Reasonable Request To Depose Each of Defendants' Experts Should Be Granted Without Delay

Plaintiffs should be permitted to depose all three of Defendants' experts, and there is no reasonable basis for preventing Plaintiff from so doing.

---

[2] Defendants' arguments about the "eggshell Plaintiff" are irrelevant under both federal and Washington law. Instead, "the time-honored legal principle that a wrongdoer takes his victim as he finds him" means that if the [Defendants are] liable for [Plaintiff's] other injuries [they] also must bear liability for [Plaintiff's] death." *Wakefield v. Nat'l Labor Relations Bd.,* 779 F.2d 1437, 1438 (9th Cir.1986). "This principle renders defendants liable for any physical injury they cause, no matter how unforeseeable, once they inflict harm on a plaintiff's body." *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1192–93 (9th Cir. 2002), *partially abrogated on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016); *see also Pierce v. S. Pac. Transp. Co.*, 823 F.2d 1366, 1372 (9th Cir. 1987) ("The eggshell plaintiff rule simply means that a tortfeasor takes his victim as he finds him. Clearly the eggshell plaintiff rule applies in cases in which the cause and effect of an injury are physical."); Washington Pattern Instruction, No. 30.18.01.

Plaintiff's Motion to Conduct
Additional Depositions – Page 9
Case No. 19-490

LOEVY & LOEVY
100 S. KING STREET, #100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

A. **The Depositions Are Proportional to the Needs of the Case, and Plaintiffs Have A Particular Need for the Expert Depositions**

Under Rule 26, "a party should be permitted discovery of matters relevant to any party's claim or defense and proportional to the needs of the case." There is no question this standard has been met here: Defendants have disclosed their experts because they believe that these witnesses will assist in their defense. In addition, Defendants cannot make an argument that these experts are disproportionate to the needs of the case—otherwise they should not have been disclosed at all. In other words, the discovery is neither duplicative nor unreasonably cumulative. *Nosrati*, 2020 WL 1181497, at *4; *Andamiro U.S.A*, 2001 WL 535667, at *2.

Moreover, this Court considers the "importance of the issues at stake in the action, and "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26. These factors overwhelmingly favor allowing Plaintiff to depose Defendants' three experts. Indeed, two of these experts opine directly about use of force issues and the nature of Mr. Leng's injuries—a core issue of dispute in this suit.

These sorts of interests are heightened in this case because Mr. Leng passed away and is not here to describe what happened to himself. In this situation, "[b]ecause the person most likely to rebut the officers' version of events—the one killed—can't testify, '[t]he judge must carefully examine all the evidence in the record … to determine whether the officer's story is internally consistent and consistent with other known facts.'" *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir.1994)). Such an analysis "includes 'circumstantial evidence that, if believed, would tend to discredit the police officer's

Plaintiff's Motion to Conduct
Additional Depositions – Page 10
Case No. 19-490

LOEVY & LOEVY
100 S. KING STREET, #100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

story.'" *Id.* Here, Plaintiffs must be permitted to depose Defendants' experts to examine these issues, and Mr. Leng's death (the result of force from two police officers after he had committed no crime) demands that this basic discovery be permitted.

Accordingly, on the flipside, Plaintiff would be prejudiced at trial if he was not able to examine and ferret out, from Defendants' *own witnesses*, whether their opinions include "circumstantial evidence" that would actually discredit the officers' account. Moreover, while the fact disputes in this case—and the "dueling experts"—preclude any sort of summary judgment motion, Plaintiffs should be entitled to robust discovery as to the experts that are on the other side of the "duel." Fairness demands such a result. *Igbinovia*, 2010 WL 5070881, at *4.

### B. The Discovery So Far Was Necessary And Warranted

It is hard to imagine a case where the oral discovery in this case requested by Plaintiff was more tightly constrained. While this case—a death case as a result of a use of force—could have easily necessitated the depositions of dozens of witnesses (including medical treaters, other officers at the scene, etc.), and the likely amount in controversy (another Rule 26 factor) is in the millions of dollars, Plaintiff has only taken 8 or 9 fact witness depositions.[3] It would be frivolous to contend any of these depositions were unnecessary or unrelated to the core issues in the case:

1. <u>Defendant Whittom</u>, used force against Mr. Leng resulting in his death.
2. <u>Defendant Lucht</u>, used force against Mr. Leng resulting in his death.

---

[3] In meeting and conferring before this motion was filed, Defendants did not identify any particular deposition they believed was unnecessary or superfluous.

Plaintiff's Motion to Conduct
Additional Depositions – Page 11
Case No. 19-490

LOEVY & LOEVY
100 S. KING STREET, #100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

3. <u>Sgt. Asbel</u>, was the first officer on the scene after the incident, first spoke the individual defendants, and was obligated to investigate this use of force, per IPD policy.

4. <u>Chief of Police</u>, is the official "policymaker" for Issaquah on issues involved in this suit, and was himself intimately involved in (a) speaking with Ms. Yang after her husband passed away, (b) requesting the criminal investigation from King County, (c) sets the policy for the Issaquah Police Department, and (d) personally approved of the officers' actions in this case.

5. <u>James Lemming</u>, was the person who called 911 provoking police involvement in the first place.

6. <u>Dr. Bilimoria</u>, conducted the autopsy of Mr. Leng, gave a presentation at the Issaquah Police Department, and his report is the subject of multiple expert opinions.

7. <u>Issaquah 30(b)(6) Designee</u>, provides binding testimony on behalf of the City of Issaquah, relevant to both the officers' actions at the time as well as the City's own liability.

8. <u>Detective Mike Mellis</u>, conducted the criminal investigation of this incident, which included (a) an interview of Ms. Yang, (b) attempted interviews of the Individual Defendants that was prevened by the Chief of Police, (c) conducted an initial interview with Mr. Lemming, and (d) informed IPD officers that the scope of his investigation was criminal

Plaintiff's Motion to Conduct
Additional Depositions – Page 12
Case No. 19-490

LOEVY & LOEVY
100 S. KING STREET, #100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

and recommended IPD conduct its own internal investigation (which it has refused to do).

9. <u>Commander Chris Wilson</u>, who was the IPD liaison with Detective Mellis, met with Ms. Yang, produced notes about that meeting and his other actions, and, on information and belief, has knowledge of the Department's policies, practices, and customs.

The Defendants have disclosed over 40 witnesses, and Plaintiffs have been extremely judicious about of whom and when to take oral discovery.

### C. Plaintiffs Will Be Prejudiced If Not Permitted to Depose Defendants Experts

As noted, Plaintiff does not believe this is, at all, a summary judgment case. Indeed, "summary judgment should be granted sparingly in excessive force cases." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 795 (9th Cir. 2014) (citing *Glenn v. Washington County*, 673 F.3d 864, 871 (9th Cir. 2011)). "This principle applies with particular force where the only witness other than the officers was killed during the encounter." *Id.* Despite that fact, Defendants intend to seek summary judgment, and Plaintiffs would be prejudiced in defending against these claims if not permitted to test, expose, and inquire of the Defendants' own experts, who will presumably be offered at the motions stage.

But, even if Defendants—appropriately—do not seek summary judgment, Plaintiff will still be prejudiced at later stages in the case. For one, motions *in limine* are likely to turn on what the experts say in their depositions. Moreover, Plaintiff's ability to prepare for and conduct cross-examination will be substantially burdened if

Plaintiff's Motion to Conduct
Additional Depositions – Page 13
Case No. 19-490

LOEVY & LOEVY
100 S. KING STREET, #100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

counsel is not permitted to discover the bases (or lack thereof) for Defendants' experts' opinions. *Presidio Components,* 2009 WL 861733, at *3.

## Conclusion

Plaintiff respectfully requests an order from this Court ordering that Plaintiff be permitted to depose all of Defendants' expert witnesses.

Respectfully Submitted,

s/David B. Owens
*One of Plaintiffs' Attorneys*

LOEVY & LOEVY
David B. Owens, WSBA #53856

*Seattle:
100 S. King St. #100-748
Seattle, WA 98104

*Chicago
311 N. Aberdeen Street, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 (office)
(312) 590-5449 (cell)
david@loevy.com

### CERTIFICATE OF SERVICE

I, David B. Owens, and attorney certify that on May 14, 2020 I served the foregoing on counsel for Defendants via the Court's electronic filing system.

s/ David B. Owens

Plaintiff's Motion to Conduct
Additional Depositions – Page 14
Case No. 19-490

LOEVY & LOEVY
100 S. KING STREET, #100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900