The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

ESTATE OF WANGSHENG LENG, by and through administrator, LIPING YANG,

Plaintiffs,

v.

THE CITY OF ISSAQUAH, ISSAQUAH POLICE OFFICER M. LUCHT #1201, and ISSAQUAH POLICE OFFICER KYLEN WHITTOM, #1210,

Defendants.

No. 2:19-cv-00490-TSZ

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY FROM IRVING SCHER

NOTE ON MOTION CALENDAR:
August 21, 2020

Loevy & Loevy
David B. Owens, WSBA #53856
100 S. King St. #100-748
Seattle, WA  98014
david@loevy.com


LAW OFFICE OF HARRY WILLIAMS LLC.
Harry Williams IV, WSBA #41020
harry@harrywilliamslaw.com.
707 East Harrison
Seattle WA 98102
206.451.7195
**Attorneys for Plaintiffs**

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO
EXCLUDE TESTIMONY FROM IRVING SCHER
2:19-cv-00490-TSZ

LOEVY & LOEVY
100 S. KING STREE, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

**Motion to Strike**

Defendants have produced a new declaration and letter from Irving Scher. They should be excluded as an impermissible attempt for Dr. Scher to "bolster" his opinions and qualifications; and attempt to explain to the Court the legal standards; and because they make new claims about Dr. Arden that were not in Scher's reports. This "supplement" is obviously untimely and should be stricken. FED. R. CIV. P. 26, 37(c)(1); *Plexxikon Inc. v. Novartis Pharm. Corp.*, 2020 WL 1325068, at *2 (N.D. Cal. Mar. 20, 2020) (striking new disclosure and noting the Court was "particularly alert to . . . gamesmanship where . . . Defendant submitted the additional expert material in conjunction with its *Daubert* motions, and only after expert discovery had closed"); *Illinois Tool Works, Inc. v. Seattle Safety*, 2010 WL 11523620, at *3 (W.D. Wash. Oct. 13, 2010) (striking declaration). At minimum, the Court should ignore the submission, as in *Booth v. Appstack, Inc.*, 2016 WL 3030256, at *15 (W.D. Wash. May 25, 2016).

**Introduction**

Defendants have failed to illustrate that Scher, a biomechanical engineer, should be permitted to offer medical opinions about, or purporting to interpret, Leng's underlying medical conditions. Such experts can offer testimony about general biomechanical forces, but may not provide specific medical opinions about actual patient injuries. Scher has not followed this rule, and has not conducted a general "force analysis" at all, but has opined extensively about Leng's specific medical issues. The claim Scher 's supplement was a "rebuttal" to Dr. Arden defies credulity and this court should reject Defendants' attempt to sandbag Plaintiffs.

**Background**

Dr. Scher offers three conclusions: (1) Leng had spinal deformities caused by a degenerative condition, not by an acute loading event; (2) given the spinal deformities, it is impossible to determine the amount of force required to create Leng's spinal cord injury that led to his death; and (3) Leng's pre-existing pathologies made him more susceptible to injury. Dkt. 71-, at 9. Scher also claimed there is "no evidence" to show the officers "forced rapidly" Mr. Leng to the couch or used "excessive force." *Id.* at 8.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO
EXCLUDE TESTIMONY FROM IRVING SCHER- 1
2:19-cv-00490-TSZ

**LOEVY & LOEVY**
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

Rebuttal disclosures were due April 30, 2020. FED. R. CIV. P. 26(a)(2)(D)(ii); Dkt. 47. After initial disclosures, Dr. Arden made a timely supplement in response to Scher. Dkt. 71-2. Scher did not file a timely supplement or "rebuttal" at all, let alone one addressing Dr. Arden.

On May 14, Defendants produced Scher's supplemental report, which related solely to Scher's third conclusion. Dkt. 71-3, at 1. Scher explained: "During a call with Mr. Augenthaler, he asked me to provide in this report further detail of the biomechanical engineering analysis I used in my initial report to conclude that Mr. Leng was more susceptible to injury due to his preexisting pathologies." *Id.* These additional "details" include extensive discussion of a CT Scan of Leng's neck, and purported measurements to derive "Torg ratios" within Leng's neck. *Id.* at 1. Scher completed these "Torg ratio" calculations before disclosing the initial report and the analysis could have been in the original report. Dkt.93-1, Scher Depo., at 88. The supplement does not mention being any sort of "rebuttal" for Dr. Arden; it does not criticize Dr. Arden's original report, or even Dr. Arden's criticisms of Scher himself. Dkt. 71-1. Nonetheless, at his deposition, and after speaking with Dr. Lacy about his deposition a few days before his own, Dkt. 93-1, at 7-10, Scher for the first time attempted to interject disagreements with Dr. Arden via his third opinion. *E.g. id.* at 48-50, 54, 72, 81-82, 84-85.

**Argument**

**I.   Defendants Have Forfeited Opposition to Exclusion of (1) Scher's Second Conclusion and (2) Comment That No Evidence Illustrates "Excessive Force"**

In the motion, Plaintiffs argued that Scher's second opinion would not assist the jury. Dkt. 68 at 10-11. The motion also pointed out Scher's contention there is "no evidence" to show that the officers "forced rapidly" Mr. Leng to the couch or used "excessive force" should be excluded for having an inadequate factual basis and because Scher is not a police practices expert and cannot offer legal opinions. Dkt. 68, at 2, 4, 9 & n.2, 10. Defendants did not respond to these arguments, and have thus forfeited their opposition. *See Madera W. Condo. Ass'n v. First Specialty Ins. Corp.*, 2013 WL 4015649, at *4 (W.D. Wash. Aug. 6, 2013) ("Failure to respond to an argument made by the opposing party waives the right to do so."). The motion must be granted as to these issues.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO
EXCLUDE TESTIMONY FROM IRVING SCHER- 2
2:19-cv-00490-TSZ

LOEVY & LOEVY
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

**II.    Scher's Remaining Opinions Are Medical Opinions and Must Be Excluded**

Defendants' have not met their burden for presenting Scher's remaining analysis—conclusions 1 and 3—to the jury. They are medical opinions. There is no dispute Scher lacks medical qualifications, and there should not be a dispute that he is not qualified to offer *medical* conclusions about the severity of Leng's spinal condition or its effects. Dkt. 71-2, at 1-2.

Generally, biomechanical engineers "are qualified to determine what injury causation forces are in general and can tell how a hypothetical person's body will respond to those forces, but are not qualified to render medical opinions regarding the precise cause of a specific injury." *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 305 (6th Cir. 1997). Defendants seek to turn rule inside-out. Scher has not made models or reconstructions, and has not conducted a "causation forces" analysis one expects from a bioengineer. Dkt. 93-1 at 94-95. Scher, instead, offers specific medical injury opinions. While Dr. Scher is obviously a very qualified and has specialized training in some areas, the practice of medicine is not one of them. Nonetheless, Scher has offered "medical opinions" he is not qualified to make. Indeed, his lack of qualifications is evident in that he needed a medical expert to interpret a CT scan, which Scher is not qualified to do. That Scher is not even qualified to read or interpret a basic scan confirms he should not be permitted to tell the jury about spinal degeneration, "Torg ratios," or other medical conditions within Leng's body. Anecdotal evidence is not expert testimony. *See* Dkt. 71-11 at 24 ("[B]iomechanical engineers may have some anecdotal knowledge of medicine, but really, we're trained in different areas [from physicians].").

Tellingly, Defendants do not address the authorities cited by Plaintiffs. Dkt. 68 at 7-8. And, while there are some outliers, the weight of authority applies the general rule like *Smelser* above. That is, "because [the bioengineer] lacks the medical training necessary to identify how prior medical conditions would have contributed to Plaintiffs' alleged injuries," they are permitted to offer general causation analysis but not specific medical opinions, making the fact such an expert has reviewed medical information irrelevant. *Contreras v. Brown*, 2018 WL

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO
EXCLUDE TESTIMONY FROM IRVING SCHER- 3
2:19-cv-00490-TSZ

**LOEVY & LOEVY**
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

7254917, at *3 (D. Ariz. Dec. 4, 2018).[1] Scher's opinions are exactly the sort of specific medical conclusions he cannot offer and should be excluded.

### III.     Scher's Supplemental Report Should be Excluded

There are three separate reasons why Scher should not be permitted to testify to the things in his supplemental report: (1) they are medical opinions, not biomechanical ones; (2) the supplemental consists solely of analysis that was available at the time of the original report; and (3) the untimely disclosure prejudiced Plaintiffs.

First, Defendants contend that Scher's supplemental report "simply explained in more detail what the measurements taken by the radiologist entailed," and that these "measurements were used to reach his opinion that Mr. Leng's pre-existing spinal condition made him more susceptible to injury from trauma." Dkt. 87 at 7. These contentions confirm, again that Scher's third opinion is a *medical* conclusion, not one about biomechanical engineering.

Second, Rule 26 requires expert disclosures to be complete. FED. R. CIV. P. Rule 26(e)(1)(A). Rule 26(e) is not "a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise [its] disclosures in light of [its] opponent's challenges to the analysis and conclusions therein, can add to them to [its] advantage after the

---

[1] *See also Laski v. Bellwood*, 2000 WL 712502, at *3 (6th Cir. 2000) ("While Dr. Cheng was qualified to give general opinions about causation, he was not qualified to give *medical* opinions.") (unpublished); *Collins v. Benton*, No. CV 18-7465, 2020 WL 3605942, at *6 (E.D. La. July 2, 2020) (explaining that "multiple federal courts routinely find that biomechanical engineers are 'not qualified to render medical opinions regarding the precise cause of a specific injury,' and likewise finding a "biomechanical engineer is not qualified to provide medical causation testimony"); *Rodriguez v. Athenium House Corp.*, 2013 WL 796321, at *4 (S.D.N.Y. Mar. 5, 2013) (explaining that, "the Southern District of New York has ruled that 'biomechanical engineers are not qualified to testify 'as to whether [an] accident caused or contributed to any of plaintiff's injuries,' as this would amount to a medical  opinion'" and therefore precluded that a party's expert who had no medical training from offering specific medical opinions (quoting *Rodriguez v. Athenium House Corp*, 2013 WL 796321, at *4 (S.D.N.Y. Mar. 5, 2013)); *Oaks v. Westfield Ins. Co.*, 2014 WL 198161, at *2 (Jan. 16, 2014) (holding that the biomechanical expert went beyond his expertise in speaking to both biomechanics of a car accident but also reaching medical issues, and that medical opinions had to be excluded); *Berner v. Carnival Corp.*, 632 F. Supp. 2d 1208, 1213 (S.D. Fla. 2009) (biomechanical engineer could opine about causation but could not offer "an opinion that [the plaintiff] has suffered a brain injury or that his head striking the floor caused an injury"). Defendants' reliance upon *Allen v. State Farm Mut. Auto. Ins. Co.*, 2016 WL 9086966, at *4 (D. Alaska Aug. 2, 2016) is misplaced, given these authorities. Moreover, unlike Scher,  the *Allen* expert had "considerable experience in clinical orthopedics," including as a Vice Chairman for Research in the Department of Orthopedic Surgery" at a medical center where he attended ex-ray rounds on a daily basis, and he even taught courses at the Harvard Medical School. *Id.*

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO
EXCLUDE TESTIMONY FROM IRVING SCHER- 4
2:19-cv-00490-TSZ

LOEVY & LOEVY
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

court's deadline for doing so has passed." *Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009). Defendants do not dispute this Court should consider whether the "supplemental information was available at the time set for the initial disclosure." *Sherwin-Williams Co. v. JB Collision Servs., Inc.*, 2015 WL 4742494, at *2 (S.D. Cal. Aug. 11, 2015).

Here, as explained above, Scher's supplement provided detail that could have been in the original per the report, and the Torg ratios were calculated before the initial disclosure; but this information was omitted. Dkt. 71-3 at 1, 3; Dkt. 93-1 at 88.[2] Supplemental reports are also not permitted to attempt to correct "failures of omission" *Oberto v. Platypus Marine, Inc.*, 2017 WL 6380347, at *3 (W.D. Wash. Dec. 14, 2017), and Scher's should be excluded.

Third, the disclosure of this report was prejudicial, given that it took place just before Dr. Arden's deposition, and the Court had ordered any rebuttal come no fewer than three days before his deposition and because it included new analysis—*e.g.*, Torg ratios—that Plaintiffs did not have the opportunity to research or consider when determining an overall expert strategy. Dkt. 51; *see* Dkt. 93, Declaration of David B. Owens, ¶¶4-5, 7-10.

**IV.   Scher Cannot Be Permitted to Address Dr. Arden**

The first time Plaintiff learned Scher intended to criticize Arden via his third opinion was during Scher's deposition. *Id.* ¶11; Dkt. 93-1, at 51, 85. Counsel was absolutely surprised, given that Scher never issued a report addressing or criticizing Dr. Arden, as he himself admits. *See* Dkt.93-1 at 45 ("Q: Have you issued a report with respect to Dr. Arden or that discusses him in any way in this case? A: No."); *see also id.* at 48-49, 50-51. Indeed, rather than offering any opinion regarding Arden, and after having received Dr. Arden's report, Scher's supplement said none of his opinions had changed. Dkt. 71-1, at 9.

There is no <u>reasonable</u> dispute that Scher did not timely disclose a report or opinion that could be characterized as a rebuttal to Dr. Arden; it should be excluded. *Blough v. Shea Homes, Inc.*, 2014 WL 3694231, at * 4 (W.D. Wash. July 23, 2014). At minimum, Scher cannot

---

[2] Peters' June supplement incorporated previously-unavailable evidence—most significantly the 30(b)(6) deposition and new documents produced by Defendants just before that deposition (as explained elsewhere). *See* Dkt. 52, 55, 67-3. These situations reports are apples and oranges.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO
EXCLUDE TESTIMONY FROM IRVING SCHER- 5
2:19-cv-00490-TSZ

**LOEVY & LOEVY**
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

be permitted to expand his supplement to include new opinions—and criticisms—related to Dr. Arden which were first disclosed during his deposition. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) ("Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony. The purpose of Rule 26(a)(2) is to provide notice to opposing counsel—before the deposition—as to what the expert witness will testify, and this purpose would be completely undermined if parties were allowed to cure deficient reports with later deposition testimony." (citations omitted)).

Plaintiffs are prejudiced by the surprise new attack on their expert for the first time in deposition *Krause v. Cty. of Mohave*, 2020 WL 2316091, at *8 (D. Ariz. May 8, 2020). Prejudice inheres from disclosure during "a deposition months after the scheduled deadline for both initial and rebuttal reports" because it deprives "the opportunity to rebut [the expert's] new opinions with expert testimony of their own, meaningfully depose [the expert[ on the new opinions, or suitably prepare for [the] examination." *Id.* . The new disclosure prejudiced Plaintiffs *during* the deposition; as Plaintiffs were not prepared to addresses Scher as a rebuttal witness. Dkt 93, ¶12. Plaintiffs did not have the opportunity to consult with Dr. Arden (or another expert) about Scher's third opinion or "Torg ratios" as some sort of criticism of Dr. Arden—the issue came out of left field. *Id.* ¶¶11-12. Nor did Plaintiff have the opportunity to retain or disclose an expert pointing out the contradiction between Scher's new criticisms of Arden, which are inconsistent with his second opinion (that he cannot tell the amount of force used). *Id.* Moreover, had Plaintiffs known Scher intended to criticize Arden, Plaintiffs would have had Arden respond and almost certainly disclosed a reconstruction, and/or other medical/vocational expert. *Id.* ¶¶3-8, 13-14. Plaintiffs did not undertake this effort because Scher's opinions were not critical of Plaintiffs' experts. *Id.* ¶¶3-8, 13-14. Defendants' suggestion Plaintiffs had opportunity to explore Scher's new opinions during the deposition is beyond "hard to swallow" and, as in *Krause*, should be rejected. 2020 WL 2316091, at *8.

## Conclusion

Plaintiff respectfully requests the motion to exclude Scher be granted.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY FROM IRVING SCHER- 6
2:19-cv-00490-TSZ

**LOEVY & LOEVY**
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

RESPECTFULLY SUBMITTED

/s/David B. Owens
*One of Plaintiffs' Attorneys*

Loevy & Loevy
David B. Owens, WSBA #53856
100 S. King St. #100-748
Seattle, WA 98014
david@loevy.com

LAW OFFICE OF HARRY WILLIAMS LLC.
Harry Williams IV, WSBA #41020
harry@harrywilliamslaw.com.
707 East Harrison
Seattle WA 98102
206.451.7195
**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I, David B. Owens, an attorney, certify that on August 21, 2020, I caused the foregoing to be filed on the court's electronic docket via ECF and thereby effected service on all counsel of record.

/s/David B. Owens

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY FROM IRVING SCHER- 7
2:19-cv-00490-TSZ

**LOEVY & LOEVY**
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900