UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ESTATE OF WANGSHENG LENG, by and through administrator LIPING YANG; and LIPING YANG, individually,[1]

Plaintiffs,

v.

CITY OF ISSAQUAH; ISSAQUAH POLICE OFFICER M. LUCHT #1201; and ISSAQUAH POLICE OFFICER KYLEN WHITTOM #1210,

Defendants.

C19-490 TSZ

ORDER

THIS MATTER comes before the Court on a motion for summary judgment, docket no. 60, brought by defendants City of Issaquah, Issaquah Police Officer Michael Lucht, and Issaquah Police Officer Kylen Whittom. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following Order.[2]

---

[1] *See infra* note 3.

[2] Plaintiffs' motion, docket no. 110, for leave to file an overlength, revised response to defendants' motion for summary judgment, is GRANTED. Plaintiffs' corrected response, which is attached to a praecipe, docket no. 111, has been considered. Defendants' motion to strike, docket no. 106, portions of plaintiffs' original response, is STRICKEN as moot.

ORDER - 1

**Background**

On August 5, 2018, Lucht and Whittom responded to a report of a domestic dispute at the home of Wangsheng Leng and Liping Yang in Issaquah.  *See* Incident Report, Ex. 7 to Ragonesi Decl. (docket no. 62-7); *see also* Ex. 2 to Ragonesi Decl. (docket no. 62-2).  Leng and Yang were husband and wife for 40 years prior to Leng's death in 2018, and they had immigrated from China in 2010.  Yang Dep. at 7:21-8:1 & 9:5-7, Ex. 3 to Owens Decl. (docket no. 101-3).  The parties dispute what happened after the police officers made contact with the couple.  According to Lucht and Whittom, when Yang opened the door to the residence, Leng was standing behind her, pulling on her T-shirt, exposing her stomach.  Lucht Dep. at 74:15-17, Ex. 4 to Ragonesi Decl. (docket no. 62-4).  In contrast, Yang testified that, when she opened the door, Leng was in the bedroom, then came out and stood behind her, but did not touch her.  Yang Dep. at 18:17-19, 19:20-23, & 20:9-11, Ex. 3 to Owens Decl. (docket no. 101-3).  Yang denies that her T-shirt had been pulled up to expose her stomach.  Yang Decl. at ¶ 2, Ex. 18 to Ragonesi Decl. (docket no. 62-18).  Yang has further declared under oath that, when she was in the open doorway, Leng "did not touch or grab" her or her clothing, and that Lucht's statement that her T-shirt was pulled up is "not true."  Yang Decl. at ¶¶ 3 & 4, Ex. 2 to Owens Decl. (docket no. 101-2).

Lucht and Whittom contend that, as they were attempting to communicate with Yang, the door began to close.  Lucht Dep. at 108:18-20 (docket no. 62-4).  Lucht then decided to enter the home, and he has testified that, as he "stepped across the threshold," Leng "started coming towards" him.  *Id.* at 108:18-22 & 109:12-21.  Yang has

ORDER - 2

contradicted this account, explaining that she does not speak English, but that she gestured to the officers to come in and that neither she nor her husband tried to close the door. Yang Dep. at 21:4-7 & 22:17-21, Ex. 5 to Ragonesi Decl. (docket no. 62-5). Yang has indicated that the officers pulled Leng from behind her and took him towards the couch. *Id.* at 22:24-23:1. Yang states that, right before being grabbed by the officers, Leng, who suffered from Alzheimer's disease, had been making "nonsense" sounds in his normal (as opposed to a loud) voice. *Id.* at 20:12-24 & 57:8-24, Ex. 3 to Owens Decl. (docket no. 101-3).

Lucht and Whittom worked together to hold Leng's chest against the couch and handcuff him. Lucht Dep. at 115:18-22, 116:5-7; 120:22-23, & 121:1-8 (docket no. 62-4). Leng's body immediately went limp. *Id.* at 121:9-13 & 121:23-25. The Incident Report for this matter indicates that the "subject [was] detained," that "no assault" had occurred, and that "no injury's" [sic] resulted from the use of force. Ex. 7 to Ragonesi Decl. (docket no. 62-7). Leng, however, was transported to Swedish Medical Center in Issaquah, underwent surgery for spinal cord decompression, and died on September 5, 2018, approximately a month after the encounter with Lucht and Whittom. Exs. 8 & 15 to Ragonesi Decl. (docket nos. 65-1 & 65-2). The King County Medical Examiner certified Leng's death as a homicide, opining that it had been caused by "aspiration pneumonia due to post-traumatic syringomyelia of cervical spinal cord due to blunt force injury of the neck," which "occurred in circumstances involving the use of physical restraint." Autopsy Report at 1, Ex. 8 to Ragonesi Decl. (docket no. 65-1).

On behalf of Leng's Estate, Yang brings claims for (i) unlawful seizure, (ii) use of excessive force, (iii) negligence, (iv) assault and battery, and (v) violation of Article I, Section 7 of the Washington State Constitution.  The Amended Complaint also contains "counts" of wrongful death, "survival action," indemnification, and respondeat superior, but these are legal theories for standing or vicarious liability, not substantive claims. Defendants seek summary judgment on the merits of plaintiffs' claims.  In addition, both Lucht and Whittom assert that they are entitled to qualified and "good faith" immunity.

**Discussion**

**A.    Standard for Summary Judgment**

The Court may grant summary judgment only if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of factual issues.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The adverse party is entitled to have all "justifiable inferences" from the evidence drawn in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Summary judgment is warranted when the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party on matters as to which such party will bear the burden of proof at trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Celotex*, 477 U.S. at 322.

**B.    Standing (Wrongful Death and Survival of Actions)**

Under Washington law, a personal representative may maintain an action on behalf of the statutory beneficiaries (for example, spouse and children) of a person whose

1  death was caused by the "wrongful act, neglect, or default" of another.  RCW 4.20.010(1)

2  & RCW 4.20.020.  Similarly, a personal representative may pursue claims that survive a

3  person's death, but may recover noneconomic damages only for the decedent's statutory

4  beneficiaries.  RCW 4.20.046(1)&(2).  In this matter, as administrator of Leng's Estate,

5  Yang may assert both (i) causes of action personal to Leng that survived his death,

6  namely use of excessive force, unlawful seizure, and assault and battery, and (ii) theories

7  of liability relating to Leng's allegedly wrongful death, including negligence.  The Court

8  treats Counts V and VI of the Amended Complaint, docket no. 40, as pleading Yang's

9  grounds for standing, and not as alleging any independent claims.  *See also* *infra* note 3.

10 **C.    Fourteenth Amendment Claim**

11         The operative pleading mentions the Fourteenth Amendment, *see* Am. Compl. at

12 ¶¶ 82 & 87 (docket no. 40), but does not make clear what type of claim is being made

13 under the Fourteenth Amendment.  To the extent that the Fourteenth Amendment is cited

14 solely as a basis for extending the Fourth Amendment to state actors, it is not a separate

15 claim under 42 U.S.C. § 1983.  To the extent that a substantive due process claim is

16 alleged, it is DISMISSED with prejudice as to Leng's Estate, which is limited to its

17 Fourth Amendment claims; Leng's Estate may not pursue a Fourteenth Amendment

18 claim for interference with familial relationships.  *See* *Estate of Adomako v. City of*

19 *Fremont*, 2018 WL 587146 at *6 (N.D. Cal. Jan. 29, 2018) (citing *Curnow v. Ridgecrest*

20 *Police*, 952 F.2d 321, 325 (9th Cir. 1991)).

21         Whether Yang, as Leng's spouse, as opposed to his parent or child, may assert a

22 substantive due process claim for loss of companionship is unclear.  *See* *Brown v.*

23

ORDER - 5

*Lambert*, --- F. Supp. 3d ---, 2020 WL 4673103 at *8 (S.D. Cal. Aug. 12, 2020) (observing that the Ninth Circuit has not yet explicitly acknowledged a Fourteenth Amendment right to familial association with one's spouse).  Even if Yang could, however, maintain a deprivation-of-liberty-interest claim, she has never pleaded one, is now long past the deadline for amending to add such claim, and has offered no analysis in support of such claim in her response to defendants' motion for summary judgment.[3]  Defendants' motion for summary judgment is therefore GRANTED with respect to any claim asserted under the Fourteenth Amendment.

**D.     Fourth Amendment Claims**

**1.     Unlawful Seizure / Excessive Force**

An arrest constitutes an unlawful seizure if initiated "without probable cause or other justification."  *See* *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001).  A brief detention, even if handcuffing is involved, is not necessarily an arrest, but such *Terry* stop must be supported by reasonable suspicion to believe that "criminal activity may be afoot."  *Terry v. Ohio*, 392 U.S. 1, 30 (1968).  In connection with either an arrest or a *Terry* stop, the question of whether an individual has been subjected to excessive force requires a balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental

---

[3] Indeed, although Yang is described in the Amended Complaint as suing "in her own personal capacity," she is not separately listed in the caption of the operative pleading, and none of the causes of action alleged in the filing are her individual claims, as opposed to those advanced on behalf of Leng's Estate.  Thus, Yang will not be treated as a separate plaintiff, and the Clerk is DIRECTED to modify the docket accordingly.

interests at stake." Luchtel v. Hagemann, 623 F.3d 975, 980 (9th Cir. 2010) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). The facts and circumstances of each particular case must be examined, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (quoting Graham, 490 U.S. at 396). Other considerations include the quantum of force used, the availability of alternative methods of capturing or detaining the suspect, and the suspect's mental and emotional state. Id. The Court must evaluate "the totality of the circumstances," judging the reasonableness of the particular use of force from the perspective of a "reasonable officer on the scene," not with "the 20/20 vision of hindsight," and bearing in mind that police officers need not use the least intrusive means available to them. Id. at 980, 982.

With regard to whether Lucht and Whittom unlawfully seized Leng or used excessive force against him, questions of fact preclude summary judgment. The officers' stated justifications for their actions, namely Leng's tugging on Yang's T-shirt, the door beginning to shut, and Leng advancing towards the officers in an aggressive manner,[4] are contradicted by Yang's recollection of events. In addition, Lucht's testimony that Leng was "gently" moved from the doorway and lowered to the couch, Lucht Dep. at 119:18-

---

[4] Notably, although Lucht was the "responsible" officer and the first one through the threshold of Leng's and Yang's apartment, he made no mention in his written report of Leng coming towards him or making any aggressive movement. See Incident and Lucht Reports, Ex. 7 to Ragonesi Decl. (docket no. 62-7 at 1, 3).

1  22 (docket no. 62-4), is belied by the abrasions on Leng's extremities immediately after

2  the incident, <u>see</u> Ex. 17 to Ragonesi Decl. (docket no. 65-3); <u>see also</u> Arden Dep. at

3  45:23-46:1, Ex. 12 to Ragonesi Decl. (docket no. 62-12).  Although the quantum of force

4  used against Leng is unknown, it was "significant or substantial," and not "minimal," in

5  that it was sufficient to hyperextend Leng's neck and injure his spinal cord.  <u>See</u> Arden

6  Dep. at 56:12-57:4 & 68:4-11 (docket no. 62-12).  Whether this amount of force was

7  reasonable given the circumstances must be reserved for the trier of fact.

8      **2.**    **Qualified Immunity**

9      With regard to a claim brought under 42 U.S.C. § 1983, an individual defendant is

10 entitled to qualified immunity if either of the following criteria is satisfied:  (i) the alleged

11 facts do not demonstrate a constitutional violation; or (ii) the constitutional right

12 allegedly violated was not "clearly established" at the time of the events at issue.  <u>See</u>

13 <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009).  Whether a police officer is entitled to

14 qualified immunity is an issue of law that must be decided by the Court, <u>see</u> <u>Hunter v.</u>

15 <u>Bryant</u>, 502 U.S. 224, 228 (1991), but the Court may submit the related factual matters to

16 a jury, <u>see</u> <u>Morales v. Fry</u>, 873 F.3d 817, 823-24 (9th Cir. 2017).  For the reasons

17 outlined earlier, the first prong of the qualified immunity inquiry, namely whether Leng's

18 Fourth Amendment rights were violated, cannot be decided in advance of trial.

19     With respect to the second potential basis for qualified immunity, Lucht and

20 Whittom contend that, because no prior case involved identical facts, they were not on

21 notice that their conduct might be unlawful.  This argument is not consistent with

22 qualified immunity jurisprudence.  To be "clearly established," the contours of the

23

1  alleged constitutional right must simply be "sufficiently clear that a reasonable official
2  would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S.
3  730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  In other
4  words, the "state of the law" must give "fair warning" to the officer that the conduct in
5  question is unconstitutional.  *Id.* at 739-41; *see* *A.D. v. Cal. Highway Patrol*, 712 F.3d
6  446, 454 (9th Cir. 2013).  This "fair warning," however, does not require that the "very
7  action" at issue be previously deemed unlawful; rather, the unlawfulness must just be
8  "apparent" in light of the pre-existing law.  *Hope*, 536 U.S. at 739 (quoting *Anderson*,
9  483 U.S. at 640); *see also* *Deorle v. Rutherford*, 272 F.3d 1272, 1285-86 (9th Cir. 2001)
10 (observing, with respect to the deployment of a lead-filled, cloth-cased projectile into the
11 face of an unarmed, non-fleeing suspect that, "notwithstanding the absence of direct
12 precedent, the law may be, as it was here, clearly established").

13       According to the Ninth Circuit, a "bedrock Fourth Amendment precept" is that an
14 arrest must be supported by probable cause.  *Beier v. City of Lewiston*, 354 F.3d 1058,
15 1065 (9th Cir. 2004).  Similarly, the standard applicable to *Terry* stops has been part of
16 our jurisprudence for over 50 years.  And, for at least a decade, the law has been "clearly
17 established" that police officers "may not kill suspects who do not pose an immediate
18 threat to their safety," even if the suspects are armed.  *See* *Van Bui v. City & Cnty. of San*
19 *Francisco*, 699 Fed. App'x 614, 616 (9th Cir. 2017) (describing standards that were
20 applicable before December 2010, quoting *Harris v. Roderick*, 126 F.3d 1189, 1204
21 (9th Cir. 1997)).  Lucht and Whittom cannot escape liability on the theory that Leng's
22 allegedly violated rights were not "clearly established."

23

What was perhaps unknown to Lucht and Whittom was Leng's susceptibility to the particular injury at issue, which defendants' expert opines would not have occurred but for pre-existing degenerative changes in Leng's spine. <u>See</u> Lacy Report, Ex. 19 to Ragonesi Decl. (docket no. 62-19).[5]  Any attempt to characterize Leng as an "eggshell plaintiff," however, does not undermine the "clearly established" nature of his rights, and the extent to which Lucht and Whittom could have realized Leng's alleged vulnerability involves factual questions that must await trial.  To be clear, the Court is not concluding that Lucht and Whittom are not entitled to qualified immunity; the Court is merely indicating that the issue cannot be decided in dispositive motion practice.  <u>See</u> <u>Littrell v. Franklin</u>, 388 F.3d 578, 585 (8th Cir. 2004) (outlining appropriate special interrogatories to the jury).

### 3. <u>Monell</u> Liability

A municipality may not be held liable under § 1983 on a respondeat superior theory.  <u>Ulrich v. City & Cnty. of San Francisco</u>, 308 F.3d 968, 984 (9th Cir. 2002); <u>see also</u> <u>Monell v. Dep't of Soc. Servs. of N.Y.C.</u>, 436 U.S. 658 (1978).  Instead, municipal liability must be premised on one of four theories: (i) a policy or longstanding practice or custom from which the alleged constitutional violation resulted; (ii) an unconstitutional action by an official with final policy-making authority; (iii) ratification by an official

---

[5] The Court has previously ruled that Matthew Lacy, M.D. may not testify at trial in a manner other than in strict rebuttal to the testimony of Jonathan Arden, M.D.  <u>See</u> Minute Order at ¶ 4 (docket no. 112).  The Court makes no determination at this time concerning whether Dr. Lacy's opinion about the role that Leng's condition played in his death satisfies the "strict rebuttal" standard.

with final policy-making authority of a subordinate's unconstitutional conduct; or (iv) a failure to adequately train employees that amounts to "deliberate indifference" concerning the constitutional right at issue. See Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005); see also City of Canton v. Harris, 489 U.S. 378 (1989).  Plaintiff attempts to proceed on the first, third, and fourth grounds for Monell liability.

### a. Policy or Practice

Plaintiff contends that the alleged constitutional violations resulted from the City of Issaquah's policies and/or practices because (i) Lucht and Whittom believe their actions were consistent with such policies and practices,[6] (ii) the policies provide no meaningful guidance to officers, and (iii) in each year from 2014 through 2018, the Issaquah Police Department ("IPD") approved or "rubber stamped" every use of force by its officers.  Plaintiff's analysis is flawed.  With respect to plaintiff's first point, Lucht's and Whittom's discovery responses indicating that they followed IPD policies are merely subjective opinions, not objective proof of the proposition, and the officers' views cannot be imputed to the City of Issaquah.

Contrary to plaintiff's second assertion, IPD's policies set forth clear expectations that are consistent with Fourth Amendment jurisprudence.  See IPD Policies 300 (Use of Force), 322 (Search and Seizure), & 306 (Handcuffing and Restraints), Exs. 13, 15, & 16

---

[6] Plaintiff cites for support Lucht's and Whittom's responses to Interrogatory No. 9, which asked whether, during their encounter with Leng, they acted inconsistently with the policies, customs, and practices of the City of Issaquah; they both replied, "I believe my actions were consistent with department policies and practices." Exs. 22 & 23 to Owens Decl. (docket nos. 101-22 & 101-23).

1  to Owens Decl. (docket nos. 101-13, 101-15, & 101-16).  For example, IPD Policy 300

2  dictates that officers use only the amount of force that "reasonably appears necessary

3  given the facts and circumstances perceived by the officer at the time of the event to

4  accomplish a legitimate law enforcement purpose," and it lists the _Graham_ and various

5  other factors.  _See_ Ex. 13 to Owens Decl. (docket no. 101-13).  Plaintiff has not identified

6  with specificity any provision contained in or missing from IPD's policies that was itself

7  the "'actionable cause' of the constitutional violation, which requires showing both but

8  for and proximate causation."  _See_ _Tsao v. Desert Palace, Inc._, 698 F.3d 1128, 1146

9  (9th Cir. 2012).

10        As to plaintiff's last attempt to draw the requisite "direct causal link between a

11 municipal policy or custom and the alleged constitutional deprivation," _see_ _Harris_, 489

12 U.S. at 385, the evidence plaintiff has proffered does not support the broad accusation

13 that the IPD endorses or "rubber stamps" unlawful seizures and/or the use of excessive

14 force.  Rather, what the annual "Use of Force" reports show is that, during the years 2014

15 through 2018, a total of 95 patrol-related incidents involved the use of force, including

16 five times when a handgun was pointed at someone, and that, other than Leng, no one

17 died as a result.  _See_ Ex. 17 to Owens Decl. (docket no. 101-17); _see also_ Behrbaum Dep.

18 at 6:12-14, 25:13-17, Ex. 19 to Owens Decl. (docket no. 101-19) (indicating that, during

19 the tenure of the current Chief of Police, which began in April 2014, no other use of force

20 by an IPD officer has been deemed a homicide).  The injuries sustained over all five

21 years at issue, by either officers or individuals against whom force was applied, consisted

22 of one dog bite and a variety of cuts, scrapes, abrasions, bumps, bruises, and Taser probe

23

impact wounds. Ex. 17 to Owens Decl. (docket no. 101-17). Nothing in these reports suggests that the IPD has previously approved the quantum of force resulting in serious injury or death. Plaintiff will not be permitted to proceed on a policy-or-practice-based *Monell* claim against the City of Issaquah.

### b. Ratification

Plaintiff's ratification theory also lacks merit. In this case, the municipality has not officially exonerated either officer. Instead, upon learning of Leng's death, the IPD asked the King County Sheriff's Office ("KCSO") to conduct an independent investigation. Behrbaum Dep. at 23:8-13, Ex. 19 to Owens Decl. (docket no. 101-19). While the KCSO was completing its review, *see* Mellis Report (dated June 3, 2019), Ex. 3 to Ragonesi Decl. (docket no. 62-3), plaintiff initiated this litigation, *see* Compl. (docket no. 1) (filed April 3, 2019). In October 2019, the King County Prosecuting Attorney recommended to the King County Executive that an inquest be conducted. Ex. 2 to Ragonesi Decl. (docket no. 107-2). Inquests are currently on hold pending resolution of various legal challenges to an Executive Order issued in June 2020 concerning the inquest process. *See* https://www.kingcounty.gov/services/inquest-program.aspx (last visited Dec. 17, 2020). Administrative review by the IPD is currently in abeyance pending the outcome of this civil action (and presumably, any inquest). *See* Behrbaum Dep. at 23:14-22, 62:14-63:15, & 112:6-24, Ex. 19 to Owens Decl. (docket no. 101-19). In the absence of a "conscious, affirmative choice" to approve Lucht's and Whittom's actions on the part of the IPD and/or the City of Issaquah, plaintiff cannot establish ratification. *See Johnson v. Shasta County*, 83 F. Supp. 3d 918, 933 (E.D. Cal.

ORDER - 13

2015) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992)); see also *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) ("a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval").

### c.   Failure to Train

To impose § 1983 liability on a municipal employer for failure to adequately train its employees, a plaintiff must prove that the local government's omission amounted to "deliberate indifference" to the constitutional rights of its inhabitants. See *Harris*, 489 U.S. at 388-92. The requisite "deliberate indifference" exists when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. In opposing the City of Issaquah's motion for summary judgment, plaintiff has described an alleged lapse in training, but has proffered no evidence of any deliberate indifference.

According to plaintiff, Lucht testified that he believes he may treat every domestic call in the exact same way. See Resp. at 37 (docket no. 111-1) (citing Resp. (*supra*) at 5, ¶ 12 (citing Lucht Dep. at 78:13-22, 85:12-23, 99:4-8, 183:4-15, 183:22-184:11, Ex. 10 to Owens Decl. (docket no. 71-10))). Even assuming that plaintiff's characterization of Lucht's deposition responses is accurate, and even if a view that domestic calls should be handled in a uniform manner is inconsistent with IPD training and/or the law, plaintiff has not shown that the IPD knew or should have known that Lucht and/or others needed additional training on the subject. To the contrary, the annual "Use of Force" reports (on which plaintiff relied in attempting to demonstrate that IPD's practices caused the alleged

Fourth Amendment violations) actually undermine plaintiff's claim that any failure to train resulted from deliberate indifference.  Based on these five years of reports, the IPD and the City of Issaquah could reasonably conclude that no training deficiencies existed among the ranks of IPD patrol officers.  For the foregoing reasons, plaintiff's _Monell_ claim against the City of Issaquah is DISMISSED with prejudice.[7]

### 4. Punitive Damages

To recover punitive damages in connection with a § 1983 claim, a plaintiff must prove that the defendant's conduct (i) was malicious, (ii) was oppressive, or (iii) involved reckless or callous disregard for the plaintiff's constitutional rights.  _See_ _Smith v. Wade_, 461 U.S. 30, 56 (1983); _Dang v. Cross_, 422 F.3d 800, 807-08 (9th Cir. 2005).  Plaintiff has offered no evidence that Lucht or Whittom were motivated by ill will or spite, or acted with a purpose to injure Leng, and thus, in this case, punitive damages may not be premised on maliciousness.  _See_ _Dang_, 422 F.3d at 809; _see also_ 9th Cir. Model Civil Jury Instr. 5.5.  In contrast, whether Lucht or Whittom engaged in oppressive behavior or were indifferent to Leng's safety or Fourth Amendment rights constitute questions of fact that preclude summary judgment.  _See_ _Dang_, 422 F.3d at 809 & n.7 (defining an "oppressive" act or omission as one "done in a manner which injures or damages or otherwise violates the rights of another person with unnecessary harshness or severity as

---

[7] With respect to plaintiff's ratification theory, this dismissal relates solely to the facts alleged in the operative pleading and in response to the pending motion for summary judgment.  Nothing in this Order precludes plaintiff from pursuing a _Monell_ claim against the City of Issaquah based on any future ratification of the actions of Lucht and Whittom.

ORDER - 15

by misuse or abuse of authority or power or by taking advantage of some weakness or disability or the misfortunes of another person," and observing that this meaning is consistent with the common, dictionary definition of the word); *see also* 9th Cir. Model Civil Jury Instr. 5.5 (reckless disregard occurs if a defendant is completely indifferent to a plaintiff's safety or rights or persists despite a perceived risk that the behavior will violate the plaintiff's constitutional rights).  To the extent defendants' motion seeks to strike plaintiff's prayer for punitive damages, it is DENIED.

### E.   State Law Claims

#### 1.   Constitutional Claim

Plaintiff has alleged a claim under Article I, Section 7, which provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art I, § 7.  In their motion for summary judgment, defendants seek dismissal of this claim on the ground that Washington courts have not recognized a private right of action for damages for violating Article I, Section 7, citing *Reid v. Pierce County*, 136 Wn.2d 195, 961 P.2d 333 (1998).  Plaintiff has offered no response or explanation for why a state constitutional tort claim can be maintained when analogous state common law causes of action already exist.  *See id.* at 213-14.  Thus, defendants' motion for summary judgment is GRANTED with regard to plaintiff's claim under Article I, Section 7 of the Washington State Constitution.

#### 2.   Common Law Claims

For the same reasons that plaintiff's unlawful seizure and excessive force claims survive summary judgment, defendants' motion for summary judgment is DENIED as to

ORDER - 16

plaintiff's negligence claim against the City of Issaquah and plaintiff's assault and battery claim against Lucht and Whittom.  In <u>Beltran-Serrano v. City of Tacoma</u>, 193 Wn.2d 537, 442 P.3d 608 (2019), the Washington Supreme Court recognized that a plaintiff may base a claim of negligence on the "negligent acts leading up to the ultimate use of force," as opposed to the intentional act of using allegedly excessive force.  <u>Id.</u> at 546.  The <u>Beltran-Serrano</u> Court also held that negligence and assault and battery claims may coexist in circumstances similar to those at issue in this case.  <u>See id.</u> at 547-48.  Genuine disputes of material fact concerning the events preceding, and transpiring during, the detention and handcuffing of Leng preclude the Court from ruling as a matter of law on plaintiff's state common law claims.

      **3.**     **<u>Indemnification and Respondeat Superior</u>**

Whether Lucht and Whittom would be entitled to indemnification from the City of Issaquah if a judgment was entered against them in this litigation is a matter entirely separate from the merits of plaintiff's claims against the officers.  The Court makes no ruling concerning whether plaintiff may subrogate to any right of indemnification that the officers might have, and the parties shall not raise the issue of indemnification at trial.  Because Lucht and Whittom were on duty as Issaquah police officers at the time the events at issue occurred, the City of Issaquah has potential respondeat superior liability as to plaintiff's negligence claim.  <u>See Beltran-Serrano</u>, 193 Wn.2d at 551-52.  Thus, notwithstanding the dismissal of plaintiff's <u>Monell</u> claim, the City of Issaquah will remain a defendant in this action.

ORDER - 17

### 4. Good Faith Immunity

The individual defendants assert that they are statutorily immune from plaintiff's assault and battery claim, citing Washington's Domestic Violence Act, which provides in relevant part:

> A peace officer shall not be held liable in any civil action for an arrest based on probable cause, enforcement in good faith of a court order, or any other action or omission in good faith under this chapter arising from an alleged incident of domestic violence brought by any party to the incident.

RCW 10.99.070. Lucht's and Whittom's reliance on RCW 10.99.070 is misplaced for three reasons: (i) they did not effect an arrest based on probable cause; (ii) they did not enforce a court order; and (iii) their acts or omissions were not under RCW Chapter 10.99 and did not arise from an alleged incident of domestic violence ("DV"). Indeed, in his written report, Whittom indicated that "[n]o DV had occurred." Ex. 7 to Ragonesi Decl. (docket no. 62-7 at 5). Even if, however, the officers' conduct were viewed as arising from a DV incident, whether they acted in "good faith" constitutes a question of fact that cannot be decided on summary judgment. Defendants' motion for summary judgment on the basis of statutory immunity is DENIED.

### Conclusion

For the foregoing reasons, the Court ORDERS:

(1) Liping Yang will be treated as asserting claims only in her capacity as administrator of the Estate of Wangsheng Leng, and not as a separate plaintiff bringing claims individually. The Clerk is DIRECTED to modify the docket accordingly, and the

ORDER - 18

captions of future filings shall be consistent with this Order.  The only plaintiff in this matter is the Estate of Wangsheng Leng through its administrator Liping Yang.

      (2)      Plaintiff's motion, docket no. 110, for leave to file an overlength, revised response to defendants' motion for summary judgment, is GRANTED.  Defendants' motion to strike, docket no. 106, portions of plaintiff's original response, is STRICKEN as moot.

      (3)      Defendants' motion for summary judgment, docket no. 60, is GRANTED in part and DENIED in part, as follows:

           (a)      Any Fourteenth Amendment claim is DISMISSED with prejudice;

           (b)      Plaintiff's *Monell* claim against the City of Issaquah is DISMISSED with prejudice; *see also* *supra* note 7;

           (c)      Plaintiff's claim under Article I, Section 7 of the Washington State Constitution is DISMISSED with prejudice; and

           (d)      Defendants' motion is otherwise DENIED.

      (4)      In light of the Court's rulings, the following claims remain for trial: (i) unlawful seizure; (ii) use of excessive force; (iii) negligence; and (iv) assault and battery.  All claims are brought by Yang solely in her capacity as administrator of Leng's Estate.  The first two claims, pursued under § 1983, and the last claim, asserted under state common law, are against Lucht and Whittom.  The negligence claim is alleged only against the City of Issaquah.  *See* Am. Compl. at ¶¶ 92-95 (docket no. 40).  With respect to the § 1983 claims, plaintiff may seek punitive damages consistent with this Order.

(5)   Counsel are DIRECTED to meet and confer and to file, on or before January 29, 2021, a Joint Status Report indicating (i) when the parties will be prepared to proceed to trial in this matter, (ii) how many days trial is anticipated to require, and (iii) whether the parties consent to conduct the trial remotely via the ZoomGov.com platform.  For more information about virtual proceedings, please see the Order dated September 16, 2020, in *Dallo v. Holland America Line N.V., LLC*, W.D. Wash. Case No. C19-865 TSZ (docket no. 53), and visit the District's website at https://www.wawd.uscourts.gov/attorneys/remotehearings.

(6)   The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 17th day of December, 2020.

                                      Thomas S. Zilly
                                      United States District Judge

ORDER - 20