UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ESTATE OF WANGSHENG LENG,
by and through administrator LIPING
YANG,

                Plaintiff,

  v.

MICHAEL LUCHT; and KYLEN
WHITTOM,

                Defendants.

C19-0490 TSZ

ORDER

THIS MATTER comes before the Court on plaintiff's motion for a new trial, docket no. 227.  Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following Order.

**Discussion**

In August 2018, in response to a 911 call about a domestic disturbance, Issaquah Police Officers Michael Lucht and Kylen Whittom made contact with Wangsheng Leng and his wife Liping Yang at their apartment.  The parties dispute what happened after the officers arrived at the residence, but as a result of being placed on his knees, with his chest against a couch, and then handcuffed, Leng suffered a spinal cord decompression, underwent surgery, and died about one month after the encounter.  During motion

ORDER - 1

practice, the Court viewed the parties' differing accounts of the events as presenting factual questions concerning whether Leng was unlawfully seized and, regardless of whether his seizure was constitutional, whether excessive force was used to detain him. On interlocutory appeal, the Ninth Circuit disagreed in part and held that Lucht and Whittom were entitled to qualified immunity as to the unlawful entry and unlawful seizure claims.  See Estate of Leng v. City of Issaquah, No. 21-35040, 2021 WL 6101350 (9th Cir. Dec. 21, 2021).

The case proceeded to trial solely on the excessive force claim brought against Lucht and Whittom pursuant to 42 U.S.C. § 1983.[1]  After a nine-day trial, the jury returned a verdict in favor of both Lucht and Whittom.  See Verdict (docket no. 219). The basis for the jury's decision could have been as follows:  (i) the jurors might have found Lucht's and Whittom's versions of the incident more credible than Yang's or, in other words, that Lucht and Whittom used minimal force to detain Leng; (ii) the jurors might have concluded that a higher quantum of force, which Yang testified that she witnessed the officers use, was "objectively reasonable" under all of the circumstances, see Instr. No. 14A (docket no. 213); and/or (iii) the jurors might have been persuaded that Leng's injury would have resulted anyway from the natural progression of pre-existing

---

[1] Three claims (under the Fourteenth Amendment, the Monell doctrine, and Article I, Section 7 of the Washington Constitution) were dismissed on summary judgment.  See Order (docket no. 116).  A battery claim was dismissed by stipulation of the parties.  See Minute Order (docket no. 162); Stipulation (docket no. 157).  Shortly before trial, plaintiff moved to dismiss a negligence claim against the City of Issaquah.  See Order (docket no. 172); Pl.'s Mot. (docket no. 168).

ORDER - 2

1 bodily conditions, see Instr. No. 15A (docket no. 213); see also Autopsy Report, Ex. 8 to Ragonesi Decl. (docket no. 65-1).  Plaintiff does **not** contend that the verdict is "contrary to the clear weight of the evidence" or "based upon false or perjurious evidence," which are two of the three "historically recognized" grounds for a new trial.  See Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (quoting Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003), and Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 510 n.15 (9th Cir. 2000)).  Indeed, the evidence adduced at trial in this matter supports all of the grounds on which a defense verdict might have rested, and the Court will not second-guess or undermine the jury's judgment.

Plaintiff asserts that a new trial is warranted for one or more of the following reasons:  (i) during the jury selection process, the Court did not pose a specific question that plaintiff's counsel was permitted to, and did, ask of prospective jurors;[2] (ii) the Court

---

[2] Mindful of the nature of this case, the Court asked several questions during the jury selection process designed to elicit information about potential bias in favor of or against police officers.  See Tr. (May 31, 2022) at 14:20–17:7 (docket no. 230).  Plaintiff's counsel was allotted fifteen minutes for voir dire and engaged in the exact inquiry that plaintiff now contends the Court erred in not making.  See id. at 58:5–9 ("You heard the judge ask you if you believed that the police have a tendency to use more force than necessary.  We're wondering if any of you think the opposite, that the police might have a tendency to use less force than necessary or be reluctant to use force?"); see also Pl.'s Obj. at ¶¶ 32a & 33a (docket no. 153) (proposing that the Court ask whether prospective jurors "feel that police officers have a tendency to [use] less force than . . . legally permitted" or are "too reluctant to use force").  Plaintiff has made no showing that any member of the venire would have responded in the affirmative if the Court had posed plaintiff's proposed questions or would thereby have been subject to additional examination on the subject by the Court or counsel.  The cases that plaintiff has cited are distinguishable.  See Darbin v. Nourse, 664 F.2d 1109 (9th Cir. 1981) (reversing a verdict favorable to a sheriff because the trial judge, who conducted the entire voir dire himself, did not sufficiently inquire about bias in favor of law enforcement officers); see also Cunningham v. Bloxom, 80 F. App'x 587 (9th Cir. 2003) (holding that the trial court erred in providing to prospective jurors a one-sided summary of the expected evidence); Scott v. Lawrence, 36 F.3d 871 (9th Cir. 1994) (remanding for a new trial

ORDER - 3

gave jury instructions that tracked the applicable Ninth Circuit Model Instructions and accounted for an interlocutory decision by the Ninth Circuit;[3] (iii) the Court denied a vague motion in limine to limit defendants' evidence and/or argument on a particular topic as to which plaintiff tendered no objection during trial;[4] (iv) during closing

---

because the plaintiff's prior rape and sexual battery convictions were disclosed during voir dire but were later excluded from evidence). Plaintiff's assertion that the Court repeatedly asked prospective jurors to promise to give Lucht and Whittom a fair trial, while not requiring the same oath with respect to plaintiff, misstates and misconstrues the record. The only time the Court used the word "promise" was with Prospective Juror No. 14, who was eventually seated as Juror No. 7. See Tr. at 41:20–24 (docket no. 230). This "social impact and equity advisor," id. at 40:12–13, who professed a belief that police officers tend to use more force than necessary, see id. at 40:21–23, was asked whether she could promise the officers to "listen to the evidence and judge this case solely on the evidence that's presented during the trial and on [the Court's] legal instructions," id. at 41:20–23. Plaintiff offers no basis for believing that this or any other juror was "pro-police," Pl.'s Mot. at 3 (docket no. 227), or that anyone in the jury pool failed to understand that the duty to decide the matter on the evidence, consistent with the law as explained by the Court, extended equally to both sides.

[3] Plaintiff references various filings that predated the Court's final set of jury instructions, see Pl.'s Mot. at 5 (citing docket nos. 181, 183, 186, 198, & 200), but fails to provide a transcript of the formal exceptions taken outside the presence of the jury on June 8, 2022. See Minutes (docket no. 204). Absent a transcript of the objections made on the record, the Court cannot assess whether plaintiff preserved the instructional errors raised in the motion for a new trial. See Fed. R. Civ. P. 51(c)&(d). Moreover, both instructions at issue, i.e., Instructions Nos. 14A and 14B, correctly state the law, as summarized in Ninth Circuit Model Instructions Nos. 9.25 and 9.20, respectively, as well as the law of the case, as decided in Estate of Leng, 2021 WL 6101350, and they allowed the parties to make their respective arguments.

[4] Before trial, plaintiff sought to exclude "improper, excessive DV [domestic violence] evidence and arguments." Pl.'s MIL No. 3 (docket no. 140 at 11–13). Plaintiff failed to explain with particularity the evidence or anticipated arguments that should be excluded, and the Court declined to enter a blanket ruling prohibiting all DV evidence and arguments. See Minute Order at ¶ 1(3) (docket no. 158). Plaintiff accuses defendants of "repeatedly invok[ing] domestic violence" during the course of trial, but proffers no quotation of what was said by any witness or attorney, no indication that an objection was contemporaneously or shortly thereafter made, and no citation to the transcript. See Pl.'s Mot. at 10 (docket no. 227). The Court observes, however, that the parties stipulated, and the jury was informed, that Lucht and Whittom responded to a 911 call about a "domestic dispute." See Instr. No. 5 at ¶ 1 (docket no. 213). Also, defendants' repeated requests for one or more jury instructions concerning Washington's domestic violence

ORDER - 4

1  arguments, defendants' attorney reiterated that the jury was to consider only the evidence
2  adduced at trial;[5] and (v) while the jury was deliberating, the Court declined to give an
3  instruction to one juror that was not provided to the other jurors.[6] Plaintiff has identified

---

and/or mandatory arrest laws, see Defs.' Prop. Instr. Nos. 101–104 (docket nos. 163, 175 & 192), were denied.

[5] Contrary to plaintiff's contention, defendants' attorney did not, in closing argument, tell the jurors to, in essence, check their common sense at the door. To the contrary, defendants' lawyer suggested that jurors could "use [their] common knowledge and daily experience to assess" whether a person should be deemed no longer a threat simply because he or she is older. See Tr. (June 13, 2022) at 19:15–19 (docket no. 229). Defendants' counsel also made clear that the jurors should focus on the evidence, and not on incidents about which they had knowledge from their personal lives, work, or the media:

> Instruction No. 6 tells you what is not evidence. Absolutely -- and I have reinforced this -- anything that I have said, anything that legal counsel has said, or questions we've asked or objections we've made, [is] not evidence. We rely on you to remember what the witnesses said. But you were also instructed by the Court that things that you have heard or learned outside of the courtroom in this case cannot be used as evidence in this case. So I'm making a pitch to you as the jury -- and I'm hoping that at least one of you will take on the role of policing Instruction No. 6 -- if you're in deliberations and someone starts talking about something they know from personal experience or work experience or they have seen on the news or anything else, remember to call everyone's attention to No. 6. You are not allowed to engage in those discussions or let that factor into your deliberations.

Id. at 36:2–16. Plaintiff's counsel did not object to the above discussion, and he had ample opportunity in rebuttal to contradict it to the extent that it was even improper. Plaintiff also accuses defendants' attorney of shifting the burden of proof. Defendants' lawyer, however, simply offered appropriate observations about the course of the trial:

> Who brought you the actual evidence? As an example here, I have the photo of the actual scene. How many times did the plaintiff show this photo to you during the trial? Not once. Who brought Detective Mellis, the person who gathered the evidence and information in this case? . . . Defendants did. Who brought you the actual medical examiner who conducted the autopsy? Defendants did. . . . Defendants don't have to bring you evidence, but we did. If we hadn't, this would have been hidden from you.

Id. at 30:13–31:1. This analysis was well within the range of permissible closing arguments.

[6] Plaintiff's argument that Juror No. 7 should have received an instruction not given to the other jurors is built upon a misinterpretation of Juror No. 7's text message to the courtroom deputy

ORDER - 5

no error,[7] let alone any error affecting her substantial rights, see Fed. R. Civ. P. 61, and the Court is satisfied that plaintiff had a fair trial and that no miscarriage of justice will transpire if the verdict is left intact.  See Molski, 481 F.3d at 729 (indicating that a new trial may be granted "to prevent a miscarriage of justice"); Landes Constr. Co. v. Royal Bank of Can., 833 F.2d 1365, 1371–72 (9th Cir. 1987) (stating that a new trial should be granted if the Court "is left with the definite and firm conviction that a mistake has been committed").

## Conclusion

For the foregoing reasons, the Court ORDERS:

(1) Plaintiff's motion for a new trial, docket no. 227, is DENIED; and

---

clerk, which was as follows:  "I would like to be excused.  I'm finding it incredibly difficult to isolate my emotions and experiences as a person of color from the case.  I apologize – and recognize my inability to isolate these emotions is not fair to the trial."  By this point in the proceedings, Juror No. 7 had traveled outside the state for a prescheduled vacation at a resort, and she was participating in deliberations being conducted via the ZoomGov.com platform.  Contrary to plaintiff's assertion, nothing in the text message suggested that Juror No. 7 believed that she was not permitted to apply her common sense and experience to the decision-making process.  Rather, Juror No. 7 appeared to be intimating that she was having emotional difficulty with the direction that the jury was heading or would be forced to head given the evidence and the law, and she no longer wanted to participate.  As is clear from defendants' motion to excuse her, long before she was summoned for this trial, Juror No. 7 had expressed concerns about police brutality and accountability, having marched in the "White Coats" protest in the summer of 2020.  See Defs.' Mot. at 2 (docket no. 216); see also Tr. (May 31, 2022) at 67:2–5 (docket no. 230).  Plaintiff's proposed instruction to Juror No. 7, namely, "You may rely upon your common sense and experience in deliberations . . . . ," Pl.'s Obj. at 3 (docket no. 222), would have burdened Juror No. 7 with a direction not given to other jurors, and was unlikely to have changed the result because it ignored both the context in which the text message at issue was conveyed and the dilemma Juror No. 7 was probably facing, i.e., to decide with her head (based on the evidence and the law) or her heart (based on sympathy, compassion, and/or preconceived notions about police misconduct).

[7] Thus, plaintiff's claim of cumulative error lacks merit.

ORDER - 6

(2) The Clerk is DIRECTED to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 27th day of September, 2022.

*Thomas S. Zilly*
Thomas S. Zilly
United States District Judge

ORDER - 7